IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01990-MSK-MEH

ELNA SEFCOVIC, LLC, JUHAN, LP, and ROY
ROYALTY, INC., individually and on behalf of all
others individually situated,

    Plaintiffs,

v.

TEP ROCKY MOUNTAIN LLC,

    Defendant.

**JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiffs Elna Sefcovic, LLC ("Sefcovic"), Juhan, LP ("Juhan"), and Roy Royalty, Inc. (collectively, "Named Plaintiffs" or "Class Representatives")[1], and Defendant TEP Rocky Mountain LLC ("TEP"), move for final approval of the parties' class settlement agreement. As grounds for this Joint Motion, the parties state as follows:

**INTRODUCTION**

1.    This case was filed in July 2017 alleging that TEP underpaid royalties to Plaintiffs and similarly situated royalty and overriding royalty owners over a six-year period. *See* First Amend. Class Action Compl. [Dkt. #43] at ¶¶ 7, 8. Plaintiffs alleged that TEP's royalty

---

[1]    Plaintiffs moved to file a Second Amended Complaint on October 26, 2018. The Second Amended Complaint adds White River Royalties, LLC as an additional class representative for Subclass 1, Juhan, LP as an additional class representative for Subclass 3, and includes information regarding Subclass 4 as set forth in the Settlement Agreement. TEP consents to Plaintiffs' motion. To account for these new class representatives, the Parties amended the Settlement Agreement, attached in full as <u>Exhibit 1</u>.

payments were in breach of their royalty instruments and the terms of a class action settlement agreement entered in 2008 in *Lindauer v. Williams Production RMT Co.*, 2006-CV-317 (Garfield County, Colorado District Court) (the "*Lindauer* Settlement Agreement"). *See id.*

2. After over a year of litigation, the parties reached a proposed settlement that fully resolves the royalty underpayment claims of approximately 600 members of the proposed Settlement Class for the entire six-year period (the "*Sefcovic* Settlement Agreement"). *See* Exhibit 1. Pursuant to the terms of the *Sefcovic* Settlement Agreement, TEP agreed to pay over $10 million to resolve the Settlement Class' royalty underpayment claims on TEP's production and sale of natural gas (and natural gas liquids) since July 2011, extending to TEP's royalty payments prior to June 1, 2018. *See id.* at ¶ 2. In addition, TEP also agreed to a method of calculating royalties paid on or after June 1, 2018 to certain owners under particular royalty instruments. *See id.* at ¶ 9. The terms of the *Sefcovic* Settlement Agreement bestow a substantial economic benefit on the Settlement Class members.

3. The Class is defined as:

> all persons and entities to whom TEP has paid royalties and/or overriding royalties, and deducted post-production costs from those royalties and/or overriding royalties, including owners whose royalties currently are held in suspense, since July 1, 2011, on natural gas production from any well subject to the oil and gas lease agreements which the settling parties in the *Lindauer* Settlement identified as Category 2, Category 3, Category 5, and Category 11 instruments.

The Settlement Agreement, as amended, divides the Class into four Subclasses (the "Subclasses") as follows:

> Subclass 1: Elna Sefcovic, LLC, White River Royalties, LLC, and all persons and entities to whom TEP has paid royalties, and deducted post-production costs from those royalties, including

2

owners whose royalties currently are held in suspense, since July 1, 2011, on natural gas production from any well subject to the oil and gas lease agreements which the settling parties in the *Lindauer* Settlement identified as either Category 2 or Category 3 royalty instruments.

Subclass 2:  Juhan, LP, and all persons and entities to whom TEP has paid royalties and/or overriding royalties, and deducted post-production costs from those royalties and/or overriding royalties, including owners whose royalties currently are held in suspense, since July 1, 2011, on natural gas production from any well subject to the oil and gas lease agreements which the settling parties in the *Lindauer* Settlement identified as Category 5 instruments, and that currently are identified by TEP as Category 5 instruments.

Subclass 3:  Roy Royalty, Inc., Juhan, LP, and all persons and entities to whom TEP has paid royalties and/or overriding royalties, and deducted post-production costs from those royalties and/or overriding royalties, including owners whose royalties currently are held in suspense, since July 1, 2011, on natural gas production from any well subject to the oil and gas lease agreements which the settling parties in the *Lindauer* Settlement identified as Category 11 instruments, and that currently are identified by TEP as Category 11 instruments.

Subclass 4:  Juhan, LP, and all persons and entities to whom TEP has paid royalties and/or overriding royalties, and deducted post-production costs from those royalties and/or overriding royalties, including owners whose royalties currently are held in suspense, since July 1, 2011, on natural gas production from any well subject to the oil and gas lease agreements which the settling parties in the *Lindauer* Settlement identified as Category 5 or 11 instruments, but that currently are not identified by TEP as exclusively Category 5 or Category 11 instruments.

*Id.* at ¶ 1.

4.  On August 16, 2018, the Court granted the parties' Joint Motion for preliminary approval of their settlement agreement, and provisionally certified a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).  *See* Order [Dkt. #61] at 7-9.  A copy of the *Sefcovic* Settlement Agreement was attached as Exhibit A to their Joint Motion.  *See* Joint Mot. [Dkt. #56] at Exhibit

3

A. The Court expressly found that, upon preliminary review, the settlement agreement was fair, reasonable, and adequate. *See* Order [Dkt. #61] at ¶ 8.

5. On August 30, 2018, TEP paid $10,025,308 into an escrow account maintained by Bank of Oklahoma Financial. *See* Declaration of George Barton, attached as <u>Exhibit 2</u>, at ¶ 12. These escrowed funds represent the total settlement amount identified in paragraph 2 of the settlement agreement. *See* <u>Exhibit 1</u> at ¶ 2.

6. At the Court's instruction, Plaintiffs mailed notice of the settlement to approximately 643 members of the defined Class on August 21, 2018. *See* Class Counsel's Confirmation of Notice [Dkt. #74]. Of these Class members, 36 elected to exclude themselves from the Settlement Class. *See* Class Counsel's Submission of List of Royalty Owners Who Have Submitted Request to Be Excluded from the Class and the Class Settlement Agreement [Dkt. #73]. These 36 individuals and entities are not included in the Settlement Class, and pursuant to Paragraph 4(e) of the settlement agreement, the total settlement amount to be paid by TEP has been reduced by the proportionate amount attributable to these individuals and owners. A copy of the Final Distribution Schedule allocating $5,240,989.38 to the remaining Settlement Class members is attached as <u>Exhibit 3</u>. The $5,240,989.38 allocation to the 607 Settlement Class members was determined by subtracting the following from the $10,025,308 Class Settlement amount: (1) the $2,033,803.67 opt-out credit; (2) Class Counsel's requested litigation expenses of $104,915.95; (3) the $3,000 fee of the Escrow Agent; (4) Class Counsel's requested attorneys' fees of $2,627,600; and (5) the requested $15,000 in incentive award payments to the Class Representatives.

4

7. The deadline for Class members to submit objections to the proposed settlement is November 6, 2018, which is one week from the date of this Joint Motion. *See* Order [Dkt. #61] at ¶ 32. To date, the parties have not received any Settlement Class member objections to the fairness, reasonableness, or adequacy of the proposed Class Settlement.

## THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

8. The proposed Class Settlement is fair, reasonable, and adequate, and should be finally approved.

9. With respect to owners in Subclass 1, TEP's settlement payment represents at least 100% of the total amount of processing costs that Plaintiffs challenged as improperly deducted. *See* Declaration of Donald Phend, attached as Exhibit 4, at ¶ 7(a). In addition, TEP's settlement payment represents a significant portion of fuel costs challenged by Plaintiffs as improperly deducted. *See id.* The deduction of these costs was an issue specifically left undecided by the *Lindauer* Settlement Agreement. *See Lindauer* Settlement Agreement, attached as Exhibit 5, at § 4.2. The *Sefcovic* Settlement Agreement resolves this undecided issue and establishes a method of calculating royalties to Subclass 1 Class members after the effective date of the settlement. *See* Exhibit 1 at ¶ 9(a).

TEP denies that it underpaid royalties to members of Subclass 1. TEP believes that the *Lindauer* Settlement Agreement addresses processing costs for Category 2 and 3 instruments. *See* Exhibit 5 at § 4.4. If, however, the *Lindauer* Settlement Agreement does not address processing costs, TEP would have overcompensated Category 2 and 3 owners, and would be entitled to recover those overpayments. TEP further believes that gathering and fuel costs are encompassed by transportation costs. TEP therefore is permitted to deduct these costs from

Category 2 and 3 owners, as their leases expressly require those owners to bear the cost of transporting such gas "from the mouth of the well to the point of sale or use." *See* Exhibit 5 at Exhibit A; *accord* First Amend. Class Action Compl. [Dkt. #43] at Exhibit 1 (quoting relevant language from Category 2 and 3 leases).

10. With respect to owners in Subclasses 2 and 3, TEP's settlement payment represents at least 100% of the total amount of post-production costs that Plaintiffs challenged as improperly deducted under the *Lindauer* Settlement Agreement. *See* Exhibit 4 at ¶¶ 7(c), (e).

11. With respect to owners in Subclass 4, TEP's settlement payment represents more than 100% of the total amount of post-production costs that Plaintiffs challenged as improperly deducted under the *Lindauer* Settlement Agreement. *See id.* at ¶ 7(g). Subclass 4 was created because, in the course of converting division orders and royalty accounting systems from WPX Energy, Inc. ("WPX") to TEP in 2016, TEP was unable to transfer the classification of some (but not all) Category 5 or Category 11 instruments. *See* Affidavit of Alan Simpson, attached as Exhibit 6, at ¶ 8. The Class members in Subclass 4 are those owners receiving royalties or overriding royalties under instruments properly designated as Category 5 or 11 instruments, but for whom TEP has not yet re-categorized these instruments in its division orders and royalty accounting systems. *See* Exhibit 1 at ¶ 1.

Paragraph 9(d) of the *Sefcovic* Settlement Agreement provides TEP with six months to evaluate the instruments held by Subclass 4 Class members, and to determine whether those instruments are properly classified as Category 5 or Category 11 instruments under the *Lindauer* Settlement Agreement. *See id.* at ¶ 9(d). While this process is underway, TEP will pay all Subclass 4 owners consistent with the methodology governing payments under Category 11

instruments. *See id.* at ¶ 9(d)(ii). Under *Lindauer*, Category 11 owners are exempt from all costs other than transportation and NGL fractionation, whereas Category 5 owners also are subject to the allowable share of processing costs under section 4.4 of the *Lindauer* Settlement Agreement. *See* Exhibit 5 at § 4.4. Thus, while TEP is reviewing the Subclass 4 instruments, it will not deduct processing costs. *See* Exhibit 1 at ¶ 9(d)(ii).

At the conclusion of this six-month review period, owners under instruments that properly should be classified as Category 5 will be paid consistent with the Category 5 methodology. *See id*. TEP also has the right to recoup uncharged processing costs from these owners, but only as to royalties paid after June 2018. *See id.* at ¶ 9(d)(iii). Owners under instruments that should be classified as Category 11 will be paid consistent with the Category 11 methodology. *See id.* at ¶ 9(d)(ii). Finally, for any instruments that TEP has not reviewed and re-classified after six months, those owners will permanently be paid consistent with the Category 11 methodology (*i.e.*, TEP will not deduct processing costs), regardless of the language of their instrument. *See id.* at ¶ 9(d)(v). The *Sefcovic* Settlement Agreement therefore confers a substantial benefit on Subclass 4 members.

12.     The Class members' release of claims is limited to the calculation of royalties paid by TEP after July 1, 2011 and through May 31, 2018. *See id.* at ¶ 6.

13.     After mailing notice of the proposed settlement to absent Class members, Plaintiffs' counsel received numerous telephone calls, and some requests for additional information, from Class members. *See* Exhibit 2 at ¶ 13. Plaintiffs' counsel fully responded to the Class members' questions and requests. *See id*. At least one Class member advised that he

7

contacted the attorney for the *Lindauer* plaintiffs in 2017 concerning TEP's deduction of post-production costs, and was advised that the attorney would "look into" the matter. *See id.* at ¶ 14.

14. In the course of these communications from Class members, Plaintiffs' counsel received no objections to the Class Settlement or the Court giving it final approval. *See id.* at ¶ 13. The only Class members who have indicated the possibility of filing an objection are Ivo Lindauer and Diamond Minerals, LLC. *See* Correspondence from Lindauer Counsel, Exhibit 7.

15. Fed. R. Civ. P. 23(e) requires the Court's approval of a class-wide settlement agreement to ensure that it is fair, reasonable, and adequate. *See* F.R.C.P. 23(e)(2). Among the numerous factors that govern the Court's inquiry are (1) whether the proposed settlement was fairly and honestly negotiated; (2) if serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). If the negotiated class settlement appears fair, reasonable, and adequate, it should be approved, in accordance with the "strong judicial policy in favor of class action settlement." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3rd Cir. 2010)) (approving settlement as fair, reasonable, and adequate); *see also* 4 NEWBERG ON CLASS ACTIONS § 13:44 (5th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.") (citations omitted).

      a.    <u>Fair and Honest Negotiations</u>.  Negotiations are fair and honest when conducted at an arm's length by experienced counsel.  *See, e.g.*, *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) (negotiations were fair where seasoned attorneys conducted negotiations with professionalism, and no party raised concern of collusion or improper pressure); *Belote v. Rivet Software, Inc.*, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) (same).  The "vigor with which the case is prosecuted" also weighs in favor of this factor.  *Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2nd Cir. 1983)) (approving settlement where parties "conducted extensive discovery which is sufficient to evaluate the merits of the claims and defenses as well as the efficacy of the settlement."); *see also Tuten*, 41 F. Supp. 3d at 1007 (approving settlement where experienced counsel undertook voluntary discovery, retained experts, and negotiated a damages methodology).

      Here, Class Counsel have extensive experience prosecuting royalty underpayment cases in Colorado and elsewhere.  *See* <u>Exhibit 2</u> at ¶¶ 5-8.  They have litigated, and successfully resolved, a number of other very significant royalty underpayment cases on behalf of Colorado royalty owners.  *See id.*  This experience has been of great assistance to Plaintiffs' counsel in fairly and honestly negotiating resolution of this litigation with TEP's counsel.  *See id.* at ¶ 10.  Plaintiffs' counsel believe the *Sefcovic* Settlement Agreement represents a very good outcome that is fair, adequate, and reasonable for Class members on the claims at issue, both for the past and the future.  *See id.* at ¶ 11.

Before the Settlement Agreement was reached, the Parties engaged in voluntary and extensive discovery.  TEP produced hundreds of pages of documents, and gigabytes of data, totaling tens of millions of data entries.  *See* Exhibit 6 at ¶ 9.  Both Plaintiffs and TEP hired experienced royalty accounting experts to review this data and to calculate damages.  *See* Exhibit 6 at ¶ 3; Exhibit 4 at ¶¶ 3, 4.  These experts performed months of analysis, and shared their analyses with one another to confirm their accuracy.  *See* Exhibit 6 at ¶ 10; Exhibit 4 at ¶¶ 4(f), 4(i), 4(l).  The Parties, with the help of these experts, spoke on a weekly basis for several months to negotiate a methodology for determining damages and appropriate settlement terms.  *See* Exhibit 2 at ¶ 10.  There has been no assertion of collusion or improper pressure.  *See id.*

The Settlement Agreement was therefore negotiated fairly and honestly.

b.  Serious Questions of Law and Fact.  This factor requires the Court to determine "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt."  *See Ashley*, 2008 WL 384579 at *6 (internal citation omitted) (approving settlement of claims of over 200 class members to avoid the "risk" inherent "when the litigation is complex and involves numerous parties").  The existence of such doubt "augurs in favor of settlement."  *Belote*, 2014 WL 3906205 at *3 (internal citation omitted) (approving settlement).  Courts analyzing this factor should consider that uncertainty is inherent in taking a case through jury trial.  *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997) (approving settlement and acknowledging that the "one constant about litigation… is that the ultimate jury result is uncertain, unknown, and unpredictable").

Serious questions of law placed the ultimate outcome of this litigation in doubt.  The royalty underpayment issues presented in this litigation are extremely complex.  *See*

10

Exhibit 2 at ¶ 9; Exhibit 6 at ¶ 3. Plaintiffs' Class includes over 600 royalty owners covering four Subclasses. *See* Exhibit 2 at ¶ 12. Each Subclass represents a different subset of royalty instruments as defined in the *Lindauer* settlement, and each was subject to a distinct royalty payment methodology. *See id.* While each Subclass asserted breach of contract against TEP, the specific methodology underlying these allegations differed by each Subclass. *See id.*

The Parties retained experienced royalty accounting experts to perform the necessary analysis for each of the four Subclasses. *See* Exhibit 6 at ¶ 3; Exhibit 4 at ¶¶ 3, 4. These experts reviewed tens of millions of lines of royalty accounting data to understand payments made by TEP and the extent to which those payments were subject to challenge by each of the four Subclasses. *See* Exhibit 6 at ¶ 9; Exhibit 4 at ¶¶ 4(a)-(m).

Although Plaintiffs and their counsel believe they have a strong case based on their experts' analyses, and would have a good chance of prevailing on the issue of liability for two years within the six-year period, a favorable judgment in favor of the Class would be far from certain because of the serious questions of law and fact at issue. *See* Exhibit 2 at ¶ 9. Ultimately, the outcome of a trial would be predicated on a court's or jury's assessment of legal questions regarding interpretation of the *Lindauer* Settlement Agreement, the royalty language in the instruments held by Subclass 1 owners, the fuel deduction provisions in the instruments held by Subclass 2, 3 and 4 owners, and the competing experts' testimony over complex issues of natural gas marketing and royalty accounting. This inevitably would depend on the court's or jury's assessment of the credibility of each side's expert witness testimony regarding this subject matter, and the resolution of other risk factors, as identified in Class Counsel's declaration in

support of this motion.  Thus, the Class would have faced a significant risk of a judgment in favor of TEP on the issue of liability.  *See* Exhibit 2 at ¶ 9.

Plaintiffs and the Class also would have faced a serious question regarding the amount of the alleged damages to which the Class members would be entitled.  Ultimately, if the case were tried, there would have been two vastly different viewpoints presented concerning the measure of the Class members' alleged damages.  *See id.* at ¶ 9.  As with the issue of liability, each side would have presented expert witness testimony concerning the proper calculation of any damages to which the Class members might be entitled.  *See id.* at ¶ 9.  Although Plaintiffs and their counsel are confident that they would have presented a persuasive damage calculation for all Class members, the amount of damages to which the Class members are entitled would be contested, and there was considerable uncertainty regarding the amount of damages that a jury may have awarded to the Class.  *See id.*

If the parties had not been able to negotiate a fair and reasonable Settlement Agreement, then the Class members would have been required to undertake protracted litigation, which Class Counsel believes presents a serious risk and uncertainty as to ultimately recovering on their royalty underpayment claims.  For instance, in two of the five other Colorado royalty underpayment class actions which Class Counsel have handled in the last three years, the defendant natural gas producers filed for protection under Chapter 11 of the Bankruptcy Code, and precluded the class members in each of those cases from obtaining any recovery on their pre-petition royalty underpayment claims.  *See* Declaration of Stacy Burrows, attached as Exhibit 8, at ¶¶ 5-28.  On February 1, 2017, during the pendency of a class action litigation for royalty underpayments, Vanguard Natural Resources, LLC, a publicly traded limited liability company,

and its subsidiaries, filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. *See id.* at ¶ 20. Because Vanguard Natural Resources, LLC filed for protection under Chapter 11 of the Bankruptcy Code, the putative class of royalty owners were precluded from prosecuting their class action claims against Vanguard Permian, LLC, and were unable to recover any damages related to their royalty underpayment claims. *See id.* at ¶ 4. Similarly, in a class action royalty underpayment case where Class Counsel were litigating royalty underpayment claims against August Energy Partners, LLC in this Court, and had received an order granting plaintiffs' motion for class certification, the natural gas producer filed for protection under Chapter 11 of the Bankruptcy Code. On March 16, 2018, only a few months before the trial on the certified class claims was to begin, Augustus Energy Partners, LLC, a privately-owned natural gas exploration, development and production company with assets in Yuma County, Colorado, filed for protection under the Bankruptcy Code. *See id.* at ¶ 13. Through its bankruptcy, Augustus Energy Partners, LLC was permitted to discharge the class members' pre-petition claims for royalty underpayments. Thus, from Class Counsel's perspective, the significant litigation risk faced by the Class members in this case further supports the parties' request for final approval of the Settlement Agreement. The foregoing analysis is from Class Counsel's perspective only. There has been no allegation or representation that TEP is financially unsound, and TEP maintains that it is financially sound.

Thus, these serious questions of law and fact, the potential risk, and the extent to which these risks placed the ultimate outcome of the litigation in doubt, further confirm the reasonableness of the *Sefcovic* Settlement Agreement.

     c. <u>Value of Immediate Recovery</u>.  Settlement is favorable under this factor when it enables a favorable outcome for a class and avoids litigation and appeal.  *See Belote*, 2014 WL 3906205 at *4 (affirming value of immediate recovery where settlement occurred before the parties expended time and money on additional discovery, depositions, and dispositive motions); *Srebnik v. Dean*, 2007 WL 2422146, at *3 (D. Colo. Aug. 22, 2007) (approving settlement where proceeding to trial "would require the expenditure of significant resources by all parties"); *Alvarado Partners, L.P.*, 723 F. Supp. at 548 (value of immediate recovery outweighed possibility of future relief where partial settlement entitled plaintiffs to 17% of the damages sought).

    Here, the Class derived noticeable value from immediate recovery.  Through the *Sefcovic* Settlement Agreement, TEP has agreed to pay Subclass 1 at least 100% of the total amount of challenged processing costs.  *See* <u>Exhibit 4</u> at ¶ 7(a).  And TEP will pay Subclasses 2, 3, and 4 at least 100% of the total amount of challenged post-production costs.  *See id.* at ¶¶ 7(c), (e), (g).  The settlement thereby facilitates recovery for the entirety of most of Class members' claims while avoiding a time- and resource-consuming litigation.

    The likely duration of the litigation in the absence of settlement would certainly be several more years.  *See* <u>Exhibit 2</u> at ¶ 10.  Although this case has been litigated for over a year, the parties did not engage in class certification briefing, no hearing on class certification of a litigation class was set, and no trial date was set.  If a settlement had not been reached, a trial on the merits likely would not have taken place until sometime in 2020.  In addition, if the Class prevailed in a trial on the merits, TEP likely would have appealed from an adverse judgment.  *See id.* at ¶ 9.

The experience of Plaintiffs' counsel confirms that royalty underpayment cases of this nature can take many years to resolve, particularly when such cases are actually tried to a conclusion. *See id.* at ¶ 10. For example, the original *Lindauer* action was filed in 2006, settlement was entered into two years later (2008), and approved by the state court in 2009, but litigation of the two reserved claims took another seven years to get to trial and through the appeal.

Accordingly, the value of the immediate recovery factor further demonstrates the reasonableness of the *Sefcovic* Settlement Agreement.

d. <u>Parties' Judgment that the Settlement Is Fair and Reasonable</u>. When reviewing this factor, "counsel's judgment as to the fairness of the agreement is entitled to considerable weight." *Belote*, 2014 WL 3906205 at *4 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006)) (approving settlement negotiated by experienced counsel) (citation and quotations omitted); *Alvarado Partners, L.P.*, 723 F. Supp. at 548 (approving settlement where experienced class counsel believed the settlement "is in the best interests of the class"); *Martinez v. Maketa*, 2011 WL 2222129, at *2 (D. Colo. June 7, 2011) (approving settlement after deferring to the parties' agreement that the settlement is fair and reasonable). As set forth fully in Paragraph 15(a) above, Plaintiffs' counsel are experienced in prosecuting royalty underpayment claims in Colorado and elsewhere, and view the fairness of this settlement against that experience. *See* <u>Exhibit 2</u> at ¶¶ 10, 11. Plaintiffs' counsel believe the *Sefcovic* Settlement Agreement represents a fair and reasonable outcome for Class members on the claims at issue. *See id.* at ¶ 11.

    e. <u>The Class Itself Believes that the Settlement Is Fair and Reasonable</u>.  In Plaintiffs' counsel's communications with the Class members to date, the reaction to the *Sefcovic* Settlement Agreement has been very positive.  *See id.* at ¶ 13.  Through the date of this filing, Plaintiffs' counsel have not received any objections to the fairness of the Class Settlement from the over 600 members of the settlement Class.  *See id.*  Only Ivo Lindauer and Diamond Minerals, LLC have suggested that they *may* object.  See <u>Exhibit 7</u>.

    The deadline for Class members to object to the settlement is November 6, 2018.  It would appear at this point, however, that any objections to final approval of the *Sefcovic* Settlement Agreement will be minimal.  The lack of any significant number of objectors to a class settlement is another factor that weighs heavily in favor of approval of the Class Settlement.  *Make A Difference Foundation, Inc. v. Hopkins*, 2012 WL 917283, at *3 (D. Colo. Mar. 19, 2012) ("[T]he fact that only three conclusory written objections to the settlement were received... weighs heavily in favor of approval."); *Ryskamp v. Looney*, 2012 WL 3397362, at *4 (D. Colo. Aug. 14, 2012) ("[O]nly two objections to the settlement were received….  This fact weighs heavily in favor of approval of the derivative litigation settlement."); *Mohammed v. Ells*, 2014 WL 4212687, at *4 (D. Colo. Aug. 26, 2014) ("[T]he fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval.").

  16. The above-referenced factors demonstrate that the *Sefcovic* Settlement Agreement is fair, adequate, and reasonable, and should be finally approved.

## CONCLUSION

  WHEREFORE, for the reasons stated above, Plaintiffs and TEP request that the Court:

(a)     determine that the settlement was made in good faith, and that its terms are fair, reasonable, and adequate;

(b)     finally approve the proposed Class Settlement;

(c)     enter a final judgment and order of dismissal with prejudice in the form submitted with this Joint Motion;[2] and

(d)     order any further relief deemed just by the Court.

A form of the proposed final judgment and order of dismissal with prejudice is submitted to the Court along with this Joint Motion.

Dated: October 30, 2018

| | |
|---|---|
| *s/ George A. Barton* | *s/ Christopher A. Chrisman* |
| Stacy A. Burrows, Co. Bar No. 49199 | John F. Shepherd, P.C., #9956 |
| George A. Barton, Mo. Bar No. 26249 | Christopher A. Chrisman, #33132 |
| LAW OFFICES OF GEORGE A. BARTON, P.C. | Lauren R. Caplan, #49228 |
| 7227 Metcalf Ave. Suite 301 | HOLLAND & HART LLP |
| Overland Park, KS 66204 | 555 Seventeenth Street, Suite 3200 |
| Phone: (816) 300-6250 | Post Office Box 8749 |
| Fax: (816) 300-6259 | Denver, CO 80201-8749 |
| gab@georgebartonlaw.com | Phone: (303) 295-8000 |
| stacy@georgebartonlaw.com | Fax: (303) 291-9123 |
| **ATTORNEYS FOR PLAINTIFFS** | jshepherd@hollandhart.com |
| **AND THE SETTLEMENT CLASS** | cachrisman@hollandhart.com |
| | lrcaplan@hollandhart.com |
| | **ATTORNEYS FOR DEFENDANT** |
| | **TEP ROCKY MOUNTAIN LLC** |

---

[2]     The proposed Order Granting Final Approval to Class Settlement Agreement and Final Judgment submitted with this Joint Motion references and approves Class Counsel's requests for attorneys' fees and expenses, and incentive awards to Class Representatives. TEP takes no position on these requests.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2018, I filed the foregoing electronically with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

George A. Barton
Stacy A. Burrows
Law Offices of George A. Barton, P.C.
7227 Metcalf Ave. Suite 301
Overland Park, KS 66204
gab@georgebartonlaw.com
stacy@georgebartonlaw.com

David G. Seely
Fleeson, Gooing, Coulson & Kitch, L.L.C.
301 N. Main, Suite 1900
Wichita, KS  67202
dseely@fleeson.com

Nathan A. Keever
Dufford, Waldeck, Milburn & Krohn, LLP
744 Horizon Court, Suite 300
Grand Junction, CO  81506
keever@dwmk.com

George R. Miller
G.R. Miller, P.C.
534 Main Avenue
Durango, CO  81301
bob@grmillerlaw.com

s/ *Christopher A. Chrisman*

11559905_4